[Cite as *In re M.H.*, 2024-Ohio-1062.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE M.H,                                    :

                                             :          No. 112727

A Minor Child                                :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 21, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-21-109879

---

### *Appearances:*

Elizabeth Miller, Ohio Public Defender, and Timothy B. Hackett, Assistant State Public Defender, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kevin E. Bringman, Assistant Prosecuting Attorney, *for appellee.*

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} In this delayed appeal, M.H. contends that he was deprived of his right to the effective assistance of counsel in juvenile court when his attorneys entered an open plea to a discretionary serious youth offender ("SYO") sentence. For the reasons that follow, this court finds that M.H. was not deprived of his right to the effective assistance of counsel.

## I. Procedural History

{¶ 2} In November 2021, the state filed a 14-count complaint in Cuyahoga County Juvenile Court charging then 13-year-old M.H. with aggravated murder, murder, attempted murder, felonious assault, and discharge of a firearm on or near prohibited premises. All counts contained one- and three-year firearm specifications and a discretionary serious youth offender ("SYO") specification. The charges arose from an incident where two groups of young males engaged in a verbal altercation on a public street that escalated into M.H. fatally shooting the 13-year-old victim in the back. Video surveillance recorded the murder.

### A. Arraignments — Juvenile Complaint and True Bill Indictment

{¶ 3} On November 21, 2021, M.H. appeared in juvenile court with counsel and his parents for arraignment on the juvenile complaint. The magistrate explained that the SYO specification attached to each charge subjected M.H. to a "blended sentence." The magistrate thoroughly explained the legislative intent behind the SYO specification and then explained that under this "blended sentence" M.H., if found delinquent of the offenses, would receive a juvenile commitment, but would also be subject to an adult sentence if invoked by the court following his juvenile commitment. The magistrate then explained each of the 14 charges and the penalties associated with each charge, including the maximum juvenile commitment and adult sentence. M.H. was further advised of his rights under both Crim.R. 5 and Juv.R. 29. Counsel entered a denial to the juvenile complaint on behalf of M.H.

{¶ 4} The magistrate noted that although M.H. did not have any prior adjudications, he had two other pending cases. The magistrate set a $1 million bond.

{¶ 5} Subsequently on November 12, 2021, and in accordance with R.C. 2152.13(A)(3), the state obtained a true bill indictment charging M.H. with the same 14 counts and specifications as charged in the juvenile complaint — aggravated murder, murder, attempted murder, felonious assault, and discharge of a firearm on or near prohibited premises. Each count also contained one- and three-year firearm specifications and a discretionary SYO specification.

{¶ 6} On May 31, 2022, M.H. appeared with new counsel and his parents for arraignment on the true bill indictment. After the magistrate explained the nature of the offenses, M.H.'s rights, and the potential juvenile commitment and adult sentences, M.H. entered a denial of all charges. M.H. remained detained at the juvenile detention facility.

## B. Adjudication Hearing

{¶ 7} On August 25, 2022, M.H. appeared in juvenile court with counsel and his parents. The parties notified the court that they had reached a plea agreement. In open court, M.H. acknowledged that by entering into the plea agreement, he waived certain rights afforded to him because of the SYO specification, including the right to a speedy trial, jury trial, and preliminary hearing. He also executed written waivers of those rights.

{¶ 8} The prosecutor set forth the plea agreement that M.H. would admit to (1) Count 2, murder, including the discretionary SYO specification and the three-

year firearm specification; (2) Count 4, discharge of a firearm on or near prohibited premises, including the discretionary SYO specification and the three-year firearm specification; and (3) Count 7, attempted murder, including the discretionary SYO specification and the three-year firearm specification. In exchange, the state agreed to dismiss the one-year firearm specification in Counts 2, 4, and 7, and further dismiss the remaining counts, including the aggravated murder charge. The prosecutor advised the court that the plea agreement was reduced to writing and set forth all potential penalties, including the possibility of a blended sentence. Counsel for M.H. agreed with the state's recitation of the agreement. M.H. and his attorney signed the plea agreement.

{¶ 9} The trial court advised M.H. of his Juv.R. 29 and Crim.R. 11 rights "as this could be a blended sentence. Meaning one in the Juvenile System, one in the Adult System." (Tr. 10.) M.H. acknowledged that he understood that by entering the admissions outlined in the plea agreement he waived certain constitutional rights, which the court outlined for him. The court advised M.H. of the potential penalties associated with the plea agreement — a maximum juvenile term until the age of 21, and "because this is a discretionary SYO, meaning that I have the ability to impose what they call juvie life up to 21. * * * I also have the ability to impose adult penalties and sanctions, meaning I can sentence you to the Lorain Correctional [Institution "LCI"] as an adult * * * the adult sentence for murder is 15 to life." (Tr. 16.) M.H. stated that he understood the potential penalties.

{¶ 10} The record demonstrates that the trial court thoroughly explained to M.H. the penalties associated with violating the adult portion of the sentence if that part of the sentence was invoked after serving his juvenile commitment. At no time did M.H. or his attorney stipulate that the court would in fact impose the discretionary SYO specification, i.e., a blended sentence. Thereafter, M.H. admitted to Counts 2, 4, and 7 as set forth in the written plea agreement,[1] and the trial court adjudicated M.H. delinquent. M.H. was referred to the probation department, and the matter was scheduled for a disposition hearing.

## C. Disposition Hearing

{¶ 11} On September 21, 2022, M.H. appeared in court with both of his attorneys and his parents for disposition.[2] Jack Treadway, an investigative probation officer, provided the court with his presentence-investigation report, including a finding that M.H. scored in "the upper range of the moderate range for possible recidivism." (Tr. 10.) Treadway reported about M.H.'s family background, his educational history, and traumatic events that occurred in his childhood. He also provided information about M.H.'s medications and diagnoses. Treadway stated that M.H. expressed remorse for his involvement and wished to apologize to both the victim's family and his own family.

---

[1] Following M.H.'s admissions to those counts, the state dismissed two pending cases against M.H., Cuyahoga J.C. Nos. DL-21-101938 (grand theft, breaking and entering, and criminal damaging) and DL-22-103513 (attempted murder and felonious assault). (Tr. 24.)

[2] M.H. entered a denial on another case, Cuyahoga J.C. No. DL-22-108594 (assault), prior to disposition in the current case.

{¶ 12} The prosecutor presented the trial court with the facts of the case, including that the shooting was recorded by surveillance video. He said that M.H. discharged a firearm on a busy street, shooting at a group of 13-, 14-, and 15-year-olds. He said that the first shot did not strike anyone, but the second shot struck the 13-year-old victim in the back as he attempted to walk away. The prosecutor characterized the shooting as a "purposeful murder." (Tr. 12.) According to the prosecutor, during the pendency of this case, his office discovered that M.H. was involved in another shooting in May 2021, at a local recreation center. Accordingly, the state requested that the trial court impose a disposition of a blended sentence — "the maximum sentence of the juvenile portion of this sentence up to his 21st birthday, and then also an [adult] sentence on the SYO of 18 years to life." (Tr. 13.)

{¶ 13} The victim's father spoke at the disposition hearing, explaining the impact of his son's death on him and his family. He expressed to the court and M.H. that he "hope[d] you get the 18 years to life because you got a murder under your belt now." (Tr. 16.)

{¶ 14} M.H.'s attorneys provided the court with mitigation information, including that M.H. suffers from PTSD and depression due to the traumatic event of his brother's murder. Counsel stated that M.H. never received counseling to cope with this loss, but rather, the loss consumed him to the point that he lost all sense of focus and belonging. (Tr. 21.) Counsel further advised the court that M.H. was currently in counseling, with the hope of being a productive member of society. Counsel stated that M.H. is remorseful and understands that he cannot change

places with the victim nor can he change that his actions caused the death of the victim. M.H. then apologized to the victim's family, stating that he "did the wrong thing [and that he] was scared too." (Tr. 23.)

{¶ 15} The trial court imposed a juvenile disposition commitment to the Ohio Department of Youth Services ("ODYS") until his 21st birthday. With respect to the discretionary SYO specification, the trial court, after making a finding pursuant to R.C. 2152.13(D)(2)(a)(i), chose to impose the discretionary SYO sentence. The court ordered an aggregate adult sentence of 15 years to life, plus three years on the firearm specification, for a total adult sentence of 18 years to life. The court advised M.H. that the adult portion of the sentence would be stayed pending the completion of his juvenile commitment. The trial court thoroughly explained to M.H. that if he violated the terms of his juvenile commitment or engaged in inappropriate conduct, then the adult sentence could be invoked and he would serve 18 years to life in LCI. The court stated:

> [M.H.], what you have to understand right now, and get this through your head, is that your behavioral [sic] is your key.
>
> I'm a little concerned. You have two new cases that we'll deal with, but if your behavior in the Detention Center, and [your attorney] has got up and said, you know, you gotta follow the rules, well, you're not following them.
>
> So take a look at your dad, your mom and your family and take a look at these folks over here. You've gotta follow the rules.
>
> If you don't follow the rules, you will be back in front of me and trust me, folks, the [victim's] family, I will send him to 18 years to [LCI] without batting an eye, without losing any sleep.

What you did and what I saw is unforgivable. It's unfathomable. It's disturbing. * * * [b]ut for you in the middle of the day on Broadway Avenue with cars driving by, how * * * nobody else got hit by that first bullet is a miracle.

And you're lucky that you were only [13] at the time of this. Otherwise, you'd be downtown being bound over as an adult.

But again, I can sit here all day and tell you why I imposed this sentence. What I'm gonna tell you is that you have to follow the rules.

(Tr. 29-30.)

## II. The Appeal

{¶ 16} This court granted M.H. a delayed appeal, and he raises the following assignment of error:

Then 13-year-old M.H. was deprived of his right to the effective assistance of counsel in juvenile court when counsel, without risk of bindover and in exchange only for a future hypothetical benefit, entered an open plea to a discretionary SYO sentence, entailing a mandatory sentence of life in adult prison, and a "juvenile life" sentence in DYS. Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution.

{¶ 17} The Sixth Amendment to the United States Constitution guarantees an accused juvenile the same rights to effective assistance of counsel as an adult criminal defendant. *In re A.A.W.*, 8th Dist. Cuyahoga No. 101580, 2015-Ohio-1297, ¶ 33, citing *In re Gault*, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). To establish ineffective assistance of counsel, a defendant must show that counsel's representation was deficient because it "fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Sanders*, 94 Ohio St.3d 150, 151, 2002-Ohio-350, 761 N.E.2d 18, citing

*Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The failure to prove either prong of this two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697. In evaluating a claim of effective assistance of counsel, a reviewing court must be mindful that there are countless ways for an attorney to provide effective assistance in a case, and it must give great deference to counsel's performance. *Strickland* at 689.

{¶ 18} M.H. contends that his attorneys were ineffective because (1) they agreed to the SYO specification in the plea agreement, and (2) did not present any mitigating evidence or advocate against the imposition of the discretionary SYO specification. We disagree and find no deficiency in counsel's performance nor any prejudice to M.H.

{¶ 19} M.H. first contends that he was not subject to any adult sentence until his attorneys advised him to enter into a plea agreement that involved an "agreed SYO." He states that because the SYO specification was discretionary, the "SYO imposition was subject to worthwhile challenge." (Appellants Reply Brief, p. 1.) This argument is confusing and misinterprets the plea agreement.

{¶ 20} The state charged M.H. in a 14-count true bill indictment with each count containing a discretionary SYO specification. M.H. was only subject to a discretionary SYO specification because of his age at the time of the offense. *See* R.C. 2152.11 (13-year-old juveniles at the time of the offense only subject to discretionary SYO). Whether he went to trial or entered into a plea agreement, M.H.

was always subject to a potential adult sentence based on the indictment. The only scenario in which M.H. would not have been subject to a potential adult sentence is if a trier of fact acquitted him on the underlying indictment or if the state decided to dismiss the specification.

{¶ 21} M.H.'s attorneys negotiated a plea agreement with the state in which M.H. would admit to three counts of the 14-count indictment, including the discretionary SYO specification attendant to each count. In exchange, the state would dismiss the remaining nine counts, including the most serious offense of aggravated murder, which carried a possible adult sentence of up to 30 years to life in prison. Accordingly, M.H.'s attorneys minimized his potential exposure in adult prison by 15 years.

{¶ 22} Contrary to M.H.'s suggestion, the plea agreement did not include any stipulation or agreement by M.H. that the trial court would impose the SYO specification; it remained discretionary. *Compare In re J. R. R.*, 9th Dist. Summit No. 23784, 2008-Ohio-1380 (juvenile stipulated to trial court's imposition of SYO specification, thus waiving any challenge to the trial court's lack of statutory findings). Accordingly, M.H.'s counsel were not deficient in advising him to accept the plea agreement because it did not eliminate the trial court's obligation to determine whether to impose the discretionary SYO specification.

{¶ 23} M.H. also contends that his counsel's representation fell below an objective standard of reasonableness because they did not present any mitigating

evidence during disposition or advocate against the imposition of the discretionary SYO. The record does not support his argument.

{¶ 24} The record before this court reveals that the trial court considered statements by the state, the victim's family, both defense attorneys, and M.H. The court also considered the presentence-investigation report prepared by Treadway and his assessment that M.H. fell into the moderate range of recidivism. The court heard the aggravating circumstances surrounding the murder, including M.H. shooting on a busy city street and fatally striking the 13-year-old victim in the back. The court's statements alluded that it viewed the surveillance video that recorded the murder. Additionally, the court noted that M.H. had additional cases pending and was already not following the rules in the juvenile detention facility during the pendency of this case. As a result, the court found, as required prior to imposing a discretionary SYO,

> given the nature and circumstances of the violation and the history of the child, the length of time, level of security, and types of programming and resources available in the juvenile system alone are not adequate to provide the juvenile court with a reasonable expectation that the purposes set forth in section 2152.01 of the Revised Code will be met.

(Tr. 25.) *See* R.C. 2152.13(D)(2)(a)(i).

{¶ 25} Accordingly, we find that M.H. has failed to demonstrate that the outcome of the proceedings would have been different had his attorneys provided additional mitigation evidence or advocated more strongly against the imposition of the discretionary SYO specification for this court to find that he received ineffective assistance of counsel. The assignment of error is overruled.

**{¶ 26}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

MICHELLE J. SHEEHAN, J., and
LISA B. FORBES, J., CONCUR